UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ROBERT GRAY,<br><br>    Plaintiff,<br><br>vs.<br><br>MACARTHUR COMPANY,<br><br>    Defendant. | CIV. 16-5095-JLV<br><br>ORDER |

**INTRODUCTION**

  Plaintiff Robert Gray filed a complaint against defendant MacArthur Company seeking recovery for plaintiff's injuries suffered when a roll of rubber roofing materials broke loose and injured plaintiff. At the time plaintiff was injured, the rolls were being unloaded from plaintiff's flatbed trailer by defendant's employees. (Docket 1). Defendant filed an amended answer denying the allegations in plaintiff's complaint. (Docket 26). Defendant filed a motion for summary judgment together with a legal memorandum, a statement of undisputed material facts and nine exhibits. (Dockets 32-34 & 35-1 through 35-9). Plaintiff filed a legal memorandum in resistance to defendant's motion together with a response to defendant's statement of undisputed facts, three exhibits and plaintiff's affidavit. (Dockets 36, 37-1 through 37-3, 38 & 38-1). Defendant filed a reply brief and two additional exhibits. (Docket 39, 41-1 & 41-2). For the reasons stated below, defendant's motion for summary judgment is denied.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at p. 248. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

2

nonmoving party's case necessarily renders all other facts immaterial." Id. at p. 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at pp. 251-52.

**FACTUAL SUMMARY**

The following recitation consists of the material facts developed from plaintiff's complaint (Docket 1), defendant's amended answer (Docket 26), defendant's statement of undisputed material facts (Docket 34) and plaintiff's response to defendant's statement of undisputed material facts (Docket 36). Where a statement of fact is admitted by the opposing party, the court will only reference the initiating document. These facts are "viewed in the light most favorable to [Mr. Gray, who is] opposing the motion." Matsushita Elec. Indus. Co., 475 U.S. at 587. The facts material to defendant's motion for summary judgment are as follows.

Plaintiff Robert Gray is a resident of the State of Indiana. (Docket 1 ¶ 1). Defendant MacArthur Company is a business operating in Sioux Falls, South

Dakota. Id. ¶ 2. The home office of MacArthur Company is in St. Paul, Minnesota. Id.

On April 20, 2015, Mr. Gray was an employee of Boyd Operating, Inc., a trucking company located in Indiana. Id. ¶ 5. His entire career had essentially been as a truck driver dominated by mostly long-haul routes. (Docket 34 ¶ 30). Mr. Gray had driven truck for his employer for 13 years as of the date of the incident giving rise to this case. Id. ¶ 4. Mr. Gray had experience hauling rubber roofing materials, including rubber roofing rolls, for Firestone at the time of his injuries. Id. ¶ 5. Prior to April 20, 2015, Mr. Gray delivered approximately four or five loads of roofing materials from Firestone to the MacArthur Company warehouse in Sioux Falls. Id. ¶ 6; see also Docket 36 ¶ 6.

While acting in the course and scope of his employment, Mr. Gray picked up a load of roofing material from the Firestone Company located in Hendricks County, Indiana. (Docket 1 ¶ 6). The rubber roofing rolls were loaded to form pyramids and had 2x4 guards installed on the side of the trailer to keep the rolls from rolling off while being loaded. (Dockets 34 ¶ 14 & 36 ¶ 14). Mr. Gray testified that following the loading process the truck driver is responsible for placing and tightening straps across the pyramids of rolled rubber roofing

to secure the load for transport. (Docket 38-1 ¶ 8).[1] Straps were utilized to secure the rolls of roofing material while on the highway. (Docket 36 ¶ 14). Mr. Gray denies the 2x4 guards stabilized the load. Id. ¶ 15.

Mr. Gray drove the flatbed truck[2] of roofing materials to the MacArthur Company's place of business in Sioux Falls, South Dakota. (Docket 1 ¶ 7). Upon arrival, Mr. Gray unhooked the straps from the load as required and drove the truck and trailer into the warehouse unloading bay. (Docket 34 ¶ 7). Defendant's employees directed the trailer to a "crooked" position. (Docket 38-1 ¶ 10). Mr. Gray saw that this did not provide sufficient room on the passenger side of the trailer to properly operate a forklift to remove the pallets of roofing material. Id. Mr. Gray indicated to defendant's employees that the truck could be moved to where they could safely and properly remove the pallets from the passenger side. (Docket 38-1 ¶ 10). Defendant's employees never asked or directed that the trailer be moved, so it remained in this "crooked" position. Id.

Defendant's employees Redmond Patterson and Austin Irvine began unloading the flatbed using forklifts. (Dockets 1 ¶ 8 & 34 ¶ 9). They told Mr.

---

[1]Defendant objects as a general matter to Mr. Gray's affidavit. (Docket 39 at p. 2 n.2) (internal citations omitted). Other than objecting to one statement, defendant does not specifically identify which paragraphs of Mr. Gray's affidavit are contrary to his deposition testimony. Id. Defendant's objection is overruled.

[2]The court will use either "flatbed" or "trailer" to identify the part of the flatbed truck upon which the roofing materials were stacked. The court will use "cab" or "truck" to identify the motor vehicle pulling the flatbed.

Gray they did not need help unloading the trailer. (Docket 34 ¶ 9). MacArthur Company had a policy that only its employees could unload the trailer. Id. ¶ 10. Mr. Grey knew this was defendant's policy. Id.

Even though there was no set way to unload the trailer, Mr. Gray wanted his trailer unloaded using a spear, as opposed to forks on a forklift. (Docket 34 ¶ 30). Neither Firestone nor Boyd Transport cared how an end customer like MacArthur Company unloaded trailers. Id. MacArthur Company was not given any instructions on how to unload the trailer. Id.

For safety reasons, Mr. Grey knew he was to stay away from the trailer because items could fall off during the unloading process. Id. ¶ 11; see also Docket 36 ¶ 11. Mr. Gray planned to stand by the truck cab and not help unload his trailer. (Docket 36 ¶ 12). Mr. Gray knew it was generally safe to stay by the cab while defendant's employees were in the process of unloading the trailer. Id. ¶ 8 (emphasis omitted).

Mr. Grey knew when rubber roofing rolls were being unloaded from the side of the trailer, like defendant's employees were doing on the day of his injury, and the rolls are bumped by a worker unloading material on the other side of the trailer, the pyramid formation may shift causing rolls to fall or come off. (Docket 34 ¶ 23). Mr. Grey knew he should not be in the area of the trailer when it was being unloaded because he could not see what was occurring on both sides of his trailer. Id. ¶ 24.

It is common knowledge in the trucking industry that when hauling rubber rolls, or a similar product, a driver is not to change the structural side of the trailer or remove the guards unless that is discussed with the people unloading the trailer. Id. ¶ 25. It is also common knowledge that a driver should not approach the customer's employees on the side of the trailer while it is being unloaded. Id. ¶ 26. If the driver needs to talk to the unloaders, the driver should first get their attention before moving into the zone of danger. Id.

Mr. Gray observed one of defendant's forklift operators extend the forks into the pyramid to lift the rolled roofing material off the trailer. (Docket 38-1 ¶ 19). By improperly extending the forks into the pyramid the roofing material can be damaged. Id. ¶ 15. When challenged by Mr. Gray, the forklift operators stopped unloading and left the area. Id. ¶ 20. Mr. Gray intended to instruct the forklift operators on the proper way to unload when they returned. (Docket 36 ¶ 18). Because the load was Mr. Gray's responsibility, he thought he should instruct the defendant's employees how to properly unload the roofing rolls so they would not damage the goods. Id. ¶ 19.

Because the employees were gone Mr. Gray believed the area was safe. (Docket 36 ¶ 20). Several minutes went by without Mr. Gray seeing or hearing either of the two forklift operators. (Docket 38-1 ¶ 23). Mr. Gray did not notify defendant's employees he was approaching the side of the trailer. (Docket 34 ¶ 27). As he was approaching the side of the trailer, Mr. Gray did

7

not determine where Mr. Irvine and Mr. Patterson were when he removed two of the three 2x4 guards.  Id. ¶¶ 17 & 21.

While standing near the rear of the trailer waiting for the return of the defendant's employees, Mr. Gray heard a bang and was immediately struck by two or more rolls of rubber roofing.  (Docket 38-1 ¶ 24).  He did not see or hear the forklift operators prior to being struck by the rolls.  Id. ¶ 25.

Mr. Gray testified that one of defendant's employees while using a forklift caught the end of a roll closest to the front of the trailer causing two or three rolls to fall off the trailer injuring him.  (Docket 36 ¶ 22; see also Docket 35-4 at p. 11 (100:11-22).[3]  The second forklift operator told Mr. Grey he saw the rolls "fly in the air twisting" before they struck Mr. Gray.  (Docket 38-1 ¶ 29).

Based on his knowledge and experience, it was Mr. Gray's opinion the third 2x4 guard snapped in two when the rubber rolls came off the trailer.  Id. ¶ 30.  Based on the description from the second forklift operator, it was Mr. Gray's opinion the other two 2x4 guards which he removed would not have prevented or stopped the rolls from coming off the trailer.  Id.

Mr. Gray knew from firsthand experience he should not assume the risk of being on the side of a trailer while it was being unloaded because he was injured in a similar incident approximately one year earlier.  (Docket 34 ¶ 27).  Mr. Gray had removed some of the 2x4 guards in an incident in Neeland,

---

[3]The court refers to the page of the document as entered in CM/ECF and the page of the transcript because several exhibits appear as single pages and other exhibits have four pages of transcript per page in CM/ECF.

Michigan, and knew if the guards had been kept in place, they would have eliminated the danger of rubber rolls falling on him. Id. ¶ 28. He did this even though it was his employer's policy that its drivers could not remove the guards. Id. ¶ 29. Mr. Gray placed himself in danger by being at the side of the trailer in Neeland. Id.

Mr. Gray was terminated from his employment with Boyd Transport because the workers' compensation insurance carrier would not insure his employer or would significantly raise its premiums if Mr. Gray remained employed. (Docket 36 ¶ 34; see also Docket 38-1 ¶ 4).

## DISCUSSION

Defendant asserts two separate grounds on which it argues summary judgment should be granted in its favor; contributory negligence and assumption of the risk. (Docket 33 at p. 2).

**A.   Applicable Law**

The parties agree the court has jurisdiction pursuant to 28 U.S.C. § 1332 as it is a diversity action. (Dockets 1 ¶ 3 & 28 ¶ 3). In diversity actions, the court applies the substantive law of the forum state. See Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002). "[F]ederal courts sitting in diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes." Hanna v. Plumer, 380 U.S. 460, 465 (1965) (referencing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)). See also In re Baycol Products Litigation, 616 F.3d 778, 785 (8th Cir. 2010) ("in a suit based on diversity of citizenship jurisdiction the federal courts apply federal

9

law as to matters of procedure but the substantive law of the relevant state.") (internal citations omitted). Only then can the court determine whether summary judgment is appropriate. United States v. One Parcel of Real Property, 27 F.3d 327, 329 n.1 (8th Cir. 1994). In this case, the forum state is South Dakota. Accordingly, the court shall apply South Dakota law.

**B.　CONTRIBUTORY NEGLIGENCE**

Under South Dakota law "[e]very person is responsible for injury to the person, property, or rights of another caused by his . . . want of ordinary care or skill, subject . . . to the defense of contributory negligence." SDCL § 20-9-1. Contributory negligence is an affirmative defense which must be pled. SDCL § 15-6-8(c).

A claim of contributory negligence by a party asserting a claim "does not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence." SDCL § 20-9-2. In the posture of the present motion, the court must determine whether the contributory negligence of Mr. Gray, as plaintiff, is "slight in comparison with the negligence" of the employees of MacArthur Company, the defendant. Id. "The term slight in SDCL § 20-9-2 has been defined to mean small in quantum in comparison with the negligence of the [other party]." Estate of He Crow v. Jensen, 494 N.W.2d 186, 188 (S.D. 1992) (internal citation and quotation marks omitted). "It is a

question of fact which varies with the facts and circumstances of each case whether [plaintiff's] negligence is slight compared to that of [defendant's employees]." Id.

In other words, "even if [defendant's] negligence is proven, recovery may be barred or reduced by [plaintiff's] own contributory negligence." Mitchell v. Ankney, 396 N.W.2d 312, 313 (S.D. 1986). "Issues of negligence, contributory and comparative negligence . . . are ordinarily questions of fact and it must be a clear case before a trial judge is justified in taking these issues from the jury. It is only when reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this rarely occurs." Id. (internal quotation marks and citation omitted). See also Baddou v. Hall, 756 N.W.2d 554, 562 (S.D. 2008) ("[I]t must be a *clear* case before a trial judge is justified in taking these issues from the jury." (emphasis in original; internal citation omitted). "[C]redibility is for the jury to decide." Id. at 561 (internal citation omitted).

Defendant argues it is entitled to summary judgment based on plaintiff's contributory negligence. It claims "[Mr.] Gray's story . . . does not make sense as the rolls of rubber that fell on him came from the pyramid in the middle of the trailer and they landed right next to the trailer wheels . . . ." (Docket 33 at p. 7). Defendant asserts Mr. Gray's story "is a red herring, as the actual location of the injury is not a genuine issue of fact . . . because even if [Mr.] Gray was where he claims [to have been], he wasn't even supposed to be there

11

while the trailer was being unloaded[.]" Id. Defendant argues Mr. Gray should have been "near the cab" and "away from the trailer." Id. Defendant "contends it was gravity and the settling of the pyramid after the removal of two of the 2x4 guards that caused rolls to come off the trailer[.]" Id. "[E]ither way," Defendant submits "[Mr.] Gray knowingly and wrongfully placed himself in a zone of danger[.]" Id. Defendant also contends Mr. Gray should have known he was obligated to shout out to let defendant's employees know he was "moving into the zone of danger." Id. at p. 8.

Defendant asserts plaintiff's "conduct was negligent, more than slight, in comparison to the negligence of MacArthur, if any, and should preclude recovery in this case." Id. at p. 12. Defendant argues "if [Mr.] Gray was not knowingly, wrongly, and negligently beside the trailer during the unloading process, the rubber rolls . . . would not have struck . . . and injured him." Id.

Mr. Gray argues "[w]hen the forklift operators did not return to resume unloading the roofing, [he] walked to the driver's side rear of the trailer . . . to locate the [operators] and to provide them proper instructions." (Docket 38 at p. 2). Plaintiff asserts that without his knowledge one of the forklift operators approached the passenger side of the flatbed trailer. Id. Mr. Gray contends that "with limited room to operate the forklift" defendant's employee "removed a pallet from the front end of the trailer, negligently knocking off two to three rolls . . . which came off the truck like a 'helicopter blade' striking Mr. Gray." Id.

12

Whether this incident occurred in the manner described by plaintiff or as presented by defendant is a jury question. Baddou, 756 N.W.2d at 561. The jury must determine whether plaintiff was negligent and, if so, whether plaintiff's negligence was greater than slight in comparison to defendant's employees' negligence so as to bar plaintiff's recovery in this case. SDCL § 20-9-2; Estate of He Crow, 494 N.W.2d at 188. The court is not convinced this is a "*clear* case" warranting "taking these issues from the jury." Baddou, 756 N.W.2d at 562.

## C. ASSUMPTION OF THE RISK

"Assumption of the risk requires that the person: '(1) had actual or constructive knowledge of the risk; (2) appreciated its character; and (3) voluntarily accepted the risk, with the time, knowledge, and experience to make an intelligent choice.'" Jensen v. Menard, Inc., 907 N.W.2d 816, 820 (S.D. 2018) (quoting Duda v. Phatty McGees, Inc., 758 N.W.2d 754, 758 (S.D. 2008)).

> Knowledge of the risk is the watchword of assumption of risk. . . . Indeed, assumption of the risk imports a knowing and voluntary self exposure to a known danger. Plaintiffs cannot assume risks of activities or conditions of which they are ignorant. . . . They must not only know of the facts which create the danger, but they must comprehend and appreciate the danger itself. . . . The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence.

Duda, 758 N.W.2d at 758 (quotations and citations omitted). "Questions of . . . . assumption of the risk are for the jury in all but the rarest of cases so

13

long as there is evidence to support the issues." Stensland v. Harding County, 872 N.W.2d 92, 96-97 (S.D. 2015) (quoting Janis v. Nash Finch Co., 780 N.W.2d 497, 500 (S.D. 2010)).

MacArthur Company argues plaintiff "meets element one as he not only had constructive, but he had actual knowledge of the risk of the danger of placing himself next to the trailer while it was being unloaded." (Docket 33 at p. 13). Defendant contends Mr. Gray "meets element two in that he appreciated the risk of placing himself on the side of the trailer and removing the guards while the trailer was being unloaded." Id. Defendant submits plaintiff "appreciated the risk" because of his previous injury. Id. at p. 14.

Regarding the third element, defendant argues "[Mr.] Gray voluntarily accepted the risk with the time, knowledge, and experience to make his decision." Id. With this knowledge and experience, defendant submits plaintiff "removed the guards while [the trailer] was being unloaded and knowingly placed himself in the zone of danger." Id. Defendant asserts "[r]easonable men cannot differ on the question of whether Gray assumed the risk of injury by placing himself in the zone of danger." Id. (referencing Myers v. Lennox Co-op Association, 307 N.W.2d 863, 864-65 (S.D. 1981)). For these reasons, defendant contends plaintiff "made an intelligent choice" and assumed "the risk presented by that course of action." Id. (citing Myers, 307 N.W.2d at 865) (internal quotation marks omitted).

Mr. Gray asserts "there is a material issue of fact as to whether [he] exercised reasonable care in making sure that unloading had ceased, and the area had been vacated, before moving to the rear of the trailer to locate and instruct the MacArthur employees." (Docket 38 at p. 7). Plaintiff submits "[i]t is a disputed [m]aterial [f]act as to whether [he] exercised reasonable care . . . [and whether] his conduct was reasonable and prudent." Id.

In response, defendant argues "[t]he risk of placing one's self near a zone of danger, and ignoring one's company's own safety rule certainly is knowledge of a risk that is 'so plainly observable [that] anyone of 'competent faculties will be charged with knowledge of it.' " (Docket 39 at p. 7) (citing Westover v. East River Elec. Power Co-op, Inc., 488 N.W.2d 892, 901 (S.D. 1992)). Defendant submits "[r]easonable men cannot differ on the question of whether [Mr.] Gray knowingly placed himself in the zone of danger and assumed the risk of injuring himself especially when he was injured the exact same way . . . just one year prior to the injury in this case." Id. (referencing Myers, 307 N.W. 2d at 864-65).

"Whether the plaintiff knows of the existence of the risk, or whether he understands and appreciates its magnitude and its unreasonable character, is a question of fact, usually to be determined by the jury under proper instructions from the court." Duda, 758 N.W.2d at 759 (internal citation omitted). "A person is deemed to have appreciated the risk if it is the type of risk that no adult of average intelligence can deny." Id. (internal citation and

15

quotation marks omitted).  "Because adults of average intelligence cannot deny the obvious, a plaintiff's testimony on what he . . . knew or understood is not conclusive."  Id. (internal citation omitted).  "Evidence that the plaintiff undertook the injury-causing conduct despite the choice of a reasonable alternative can also establish voluntary acceptance of the risk."  Jensen, 907 N.W.2d at 821.

It is a function of the jury to determine whether Mr. Gray assumed a risk of injury by his conduct in the specific setting of this case.  Duda, 758 N.W.2d at 759.  The court finds the evidence is not "so one-sided that [defendant] must prevail as a matter of law."  Anderson, 477 U.S. at p. 252.  Defendant's motion for summary judgment on its affirmative defense of assumption of the risk is denied.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motion for summary judgment (Docket 33) is denied.

Dated March 2, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

16